# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

Balubhai G. Patel, et al.,

                    Plaintiffs,

        v.

City of Henderson, et al.,

                    Defendants.

Case No. 2:24-cv-01772-BNW

**ORDER**

Before the Court is Defendants' motion to dismiss. ECF No. 50. Plaintiffs responded at ECF Nos. 54 and 55.[1] Defendants replied at ECF No. 58. The parties are familiar with the facts and arguments of this case, so the Court incorporates them here only as necessary to its analysis. Because Plaintiffs fail to allege sufficient facts to state claims for relief, the Court grants Defendants' motion to dismiss. As set forth below, the Court grants leave to amend only as to certain claims. Defendants' request for a more definite statement is denied as moot.

## I.    DISCUSSION

### A.  Legal Standard

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Services, Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[1] In the future, Plaintiffs are advised they must file a single response. *See* Fed. R. Civ. P. 7; *see also* Local Rule 7-2.

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." *Id.* (quoting *Twombly*, 550 U.S. at 555). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." *Id.* at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in *Twombly* and *Iqbal*, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

As a general rule, courts may not consider material beyond the pleadings when deciding a motion to dismiss under Rule 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). If they do consider such material, the motion must be treated as one for summary judgment. *Id.* But there are two exceptions to this rule. Relevant here, courts may take judicial notice of matters of public record. *Id.* at 689 (citing *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

Rule 15 requires district courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is "to be applied with extreme liberality." *Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quotation omitted). Amendment is futile only if no set of facts can be proven under the amendment that would constitute a valid and sufficient claim. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

## B. Standing of the Individual Defendants

Defendants argue that the three individual Plaintiffs (Arpit, Mayurkumar, and Balubhai) lack standing to sue because they fail to explain how they maintained a personal interest in the

1    property. ECF No. 50 at 3. Plaintiffs respond that the individuals have standing to sue because

2    they endured harm to their business or family trust. ECF No. 55 at 10. In their reply, Defendants

3    explain that a trustee cannot bring claims on his own behalf over property solely owned by a trust

4    because the trustee has no personal possessory interest. ECF No. 58 at 2. Defendants further

5    explain that Nevada law precludes members of an LLC from suing on behalf of the company. *Id.*

6        In the first amended complaint, Plaintiffs state that Balubhai is the legal and beneficial

7    owner of OM Hotels, LLC; Arpit is the managing member of OM Hotels; and Mayurkumar is a

8    member of OM Hotels. ECF No. 41 ¶¶ 8–10. According to Plaintiffs, Balubhai purchased the

9    motel and leased it to Arpit, Mayurkumar, and OM Hotels. *Id.* ¶ 8. Later on, Plaintiffs specify that

10   Arpit and Mayurkumar were operating the motel by way of their roles at OM Hotels. *Id.* ¶ 10.

11   The first amended complaint contains no information about the role of the Balubhai G. Family

12   Living Trust, though the Trust is named as a Plaintiff and Balubhai is the trustee. *See* ECF No.

13   41. However, Defendants attached an exhibit showing that the Trust (not Balubhai individually)

14   owns the motel. ECF No. 50, Ex. C. The Court takes judicial notice of this public record. *See Lee*

15   *v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

16       "The question of whether a party has standing to sue under Article III is a threshold issue

17   that must be addressed before turning to the merits of a case." *Shulman v. Kaplan*, 58 F.4th 404,

18   407 (9th Cir. 2023). At the pleading stage, a plaintiff must establish standing by showing "(1) an

19   injury in fact that is concrete and particularized and actual or imminent, (2) a causal connection

20   between the injury and the defendant's conduct, and (3) a likelihood that the injury will be

21   redressed by a favorable decision." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102

22   (1998). Shareholders do not have standing to redress injuries to the corporation unless they are

23   injured directly and independently of the corporation. *Shell Petroleum, N.V. v. Graves*, 709 F.2d

24   593, 595 (9th Cir. 1983). "[A] shareholder must assert more than personal economic injury

25   resulting from a wrong to the corporation." *Id.* (citing *Von Brimer v. Whirlpool Corp.,* 536 F.2d

26   838, 846 (9th Cir. 1976)).

27       Courts in this circuit have determined that individual plaintiffs lack standing when they

28   allege injuries that flow from the LLC and are not distinct from the LLC's own injuries. *See*

*Kenney v. Wells Fargo Bank, N.A.*, No. 2:25-cv-04845-WLH-PD, 2025 WL 2117410 at *3 (C.D. Cal. July 18, 2025). As one court explained, a sole member "certainly has a financial interest in the success of [an LLC] and is undoubtedly affected when the LLC suffers a financial injury," but that injury "is derivative of [the LLC's] injury, and thus [the member] was not injured directly and independently." *Brown v. Dep't of Water & Power*, No. 2:24-cv-05152-SVW-JPR, 2024 WL 5466666, at *4 (C.D. Cal. Nov. 27, 2024). Another court noted that where "the gravamen of the complaint is injury to an LLC's property, the right of action lies with the LLC, not the individual members." *Sinclair v. Fox Hollow of Turlock Owners Ass'n*, No. 1:03-cv-05439-OWW, 2011 WL 2433289, at *4 (E.D. Cal. June 13, 2011). Similarly, only the trustee, as opposed to the beneficiaries of a trust, generally has standing to pursue claims that belong to the trust. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 567 (1990); *see also Warren v. Ficek*, No. CV 18-110-BLG-SPW-TJC, 2020 WL 6136378, at *3 (D. Mont. July 6, 2020), *report and recommendation adopted*, No. CV 18-110-BLG-SPW, 2020 WL 5525587 (D. Mont. Sept. 15, 2020) ("Here, the Property was purchased by Thornton in her capacity as Trustee. As such, any injury to the Property is an injury to the Trust and not to Warren personally.").

Here, Plaintiffs have claimed no injuries apart from the alleged injuries to the LLC or Trust. While they argue that Defendants' "closure and refusal to reopen [the motel] and classifying it as a non-conforming use" harmed them, these statements only allege harm to the Trust (as owner of the property) and the LLC (as the company who manages the motel). Despite Plaintiffs' conclusory arguments to the contrary, the first amended complaint is devoid of individual harm allegations. *See* ECF No. 55 at 10. So, the Court dismisses the claims brought by Plaintiffs Balubhai, Arpit, and Mayurkumar with leave to amend in the event they are able to properly allege individualized injury.

### C. Section 1983 Claims

#### i. Statute of Limitations

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th

1 Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "[A]

2 complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set

3 of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d

4 1204, 1206 (9th Cir.1995).

5      "Nevada's statute of limitations for personal injury actions governs the timeliness of

6 [plaintiff's] § 1983 claims." *Hamilton v. Jasperson*, 602 F. Supp. 3d 1347, 1352 (D. Nev. 2022),

7 *aff'd*, No. 22-15866, 2023 WL 2493732 (9th Cir. Mar. 14, 2023) (citing *Jones v. Blanas*, 393

8 F.3d 918, 927 (9th Cir. 2004)). The limitation period for personal injury actions in Nevada is two

9 years. *Id.*; Nev. Rev. Stat. § 11.190(4)(e). However, federal law governs when a claim accrues.

10 *Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018). The standard rule is that a claim accrues

11 "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file

12 suit and obtain relief." *Id.* (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)) (simplified).

13      Plaintiffs allege that on October 26, 2021, Defendants Massey and Dwyer searched the

14 motel, issued a correction notice, and closed the second floor of the motel with no administrative

15 hearing or opportunity to be heard. ECF No. 41 ¶¶ 13–16, 33. Plaintiffs further allege that on

16 various days in June 2022, Defendants Massey and Dwyer illegally searched the motel. *Id.* ¶ 17.

17 Defendants argue that Plaintiffs' claims stemming from October 2021 and June 2022 are barred

18 by the statute of limitations.

19      Here, Plaintiffs filed their complaint on July 2, 2024. Any § 1983 claims that accrued

20 before July 2, 2022, would be barred by the statute of limitations. Not only is the running of the

21 statute of limitations apparent from the face of the complaint; Plaintiffs do not contest

22 Defendants' arguments that these claims should be dismissed as futile.[2] Thus, Plaintiffs' § 1983

23 claims that accrued on October 2021 and June 2022 are barred and dismissed with prejudice.

24

25

26

27

28

---

[2] Local Rule 7-2(d) allows the Court to grant portions of Defendants' motion to dismiss as unopposed given that Plaintiffs fail to address several arguments.

However, Plaintiffs also allege facts in support of their § 1983 claims that occurred within the two-year period. So, the Court continues its analysis below.

### ii.  Defendants' Liability

#### 1.  *The City of Henderson*

In their complaint, Plaintiffs allege that the actions by the City of Henderson were "taken pursuant to a policy, custom, or practice to close the motel, and other properties nearby, in order to transfer such properties at a reduced and depressed value to a private developer." ECF No. 41 ¶ 46. Defendants argue that Plaintiffs have not pled any theories of liability as to the City. ECF No. 58 at 3. "Merely alleging that some unspecified permutation of City employees acted, without more, and then asking the Court to assume that those unspecified individuals have final policy-making authority will not do." ECF No. 50 at 6–7. Plaintiffs respond that "the City had a policy to close the motel and drive Plaintiffs out of business, [which] can be inferred from the post-closure actions by the City where it refused to reinspect the motel after the closure allowing the 180-day period to pass and then declaring it a non-conforming use." ECF No. 55 at 9 (citing ECF No. 41 ¶¶ 30–46).

Municipalities cannot be held liable under § 1983 on a respondeat superior theory. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). They "can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. 658). In order to establish municipal liability under § 1983, a plaintiff must prove: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). When "facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation

of the constitutional rights of their citizens," the deliberate indifference standard is satisfied. *City of Canton*, 489 U.S. at 396. Finally, municipal liability under § 1983 only attaches if the plaintiff proves "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.* at 385.

Here, Plaintiffs do not allege sufficient facts to support a *Monell* claim. Rather, they conclude—without more—that Defendants' actions were taken pursuant to a policy, custom, or practice to close the motel and transfer the properties to a private developer. *See* ECF No. 41 ¶ 46. This conclusory statement fails to allege facts as to how these events took place pursuant to a policy, how that policy amounts to a deliberate indifference of Plaintiffs' constitutional rights, or how that policy is the moving force behind the constitutional violation. But Court cannot find, at this juncture, that there are no set of facts Plaintiffs could allege to state a *Monell* claim. Thus, Plaintiffs' § 1983 claims against the City are dismissed with leave to amend.

### 2.  *Other Defendants*

"A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Defendants argue that Plaintiffs "fail to allege any facts to distinguish between the conduct of any individual defendant." ECF No. 50 at 5. Rather, Defendants  explain that Plaintiffs simply reference all "Defendants" generally. ECF No. 58 at 3. Plaintiffs do not address this argument.

Here, Plaintiffs waft back and forth between distinguishing the Defendants and lumping them together. For example, Plaintiffs allege that "the City, along with the Health Department, and Code Enforcement, including Defendants Dwyer and Massey, completely shut down the motel." ECF No. 41 ¶ 30. In the next sentence, Plaintiffs allege that the "Defendants, and each of them, did not clear Plaintiffs to operate . . ." *Id.* In addition, Plaintiffs name Paul Beaton as a Defendant but do not refer to him individually in the complaint (apart from the "parties" section). As to Plaintiffs' § 1983 claims, they group the Defendants together. "[T]he City and all of the defendants, and each of them, violated and further threaten to violate the constitutional and civil rights of the Plaintiffs . . . ." *Id.* ¶ 54. Because Plaintiffs failed to allege facts to show how the

1    individual Defendants were personally involved in the numerous claims under § 1983, those

2    claims are dismissed against the individual Defendants with leave to amend.

### iii.  First Amendment Petition and Grievances

4         The Petition and Grievances clause of the First Amendment protects the right of

5    individuals to appeal to courts and other government forums to resolve legal disputes. *Borough of*

6    *Duryea, Pa. v. Guarnieri,* 564 U.S. 379, 387 (2011). To successfully state a claim, Plaintiffs must

7    plead facts indicating that they were blocked from expressing their concerns to government

8    officials. *See Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d

9    1132, 1184 (E.D. Cal. 2017); *see also Heights Apartments, LLC v. Walz*, 30 F.4th 720, 732 (8th

10   Cir. 2022) ("To state a plausible claim under the Petition Clause, Heights must identify the claim

11   it wished to bring, [and] the official actions that frustrated its attempt to redress that

12   grievance . . . ."). Importantly, "the First Amendment does not impose any affirmative obligation

13   on the government to listen . . . ." *Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463,

14   465 (1979). "To demonstrate retaliation in violation of the First Amendment, a plaintiff must

15   prove: (1) a defendant took action that would chill a person of ordinary firmness from future First

16   Amendment activities, and (2) the defendant would not have taken the action but for the

17   defendant's desire to chill plaintiff's speech." *Mazzeo v. Gibbons*, 649 F. Supp. 2d 1182, 1194 (D.

18   Nev. 2009) (citing *Skoog v. Cnty. of Clackamas,* 469 F.3d 1221, 1232 (9th Cir. 2006)).

19        Defendants argue that Plaintiffs have alleged no facts contending that any official

20   prevented them from petitioning the government. ECF No. 50 at 7. Plaintiffs respond that they

21   were not provided an administrative hearing for the alleged non-payment of delinquent transient

22   occupancy taxes. ECF No. 55 at 2. Plaintiffs further argue that after they paid the delinquency,

23   Defendants closed the motel without a hearing and never conducted a reinspection, which raise

24   issues of retaliation. *Id.* Defendants reply that the government is under no obligation to listen or

25   respond to grievances. ECF No. 58 at 4. They further argue that even if Plaintiffs morph their

26   claim into a retaliation theory under the First Amendment, it would still fail because Plaintiffs

27   cannot allege facts that the City retaliated against them because the alleged retaliatory acts took

28   place well before the filing of this suit. *Id.*

1    Here, Plaintiffs failed to state a First Amendment claim under either theory. Their claims

2    that the City did not provide the required hearing or ceased motel operations do not allege they

3    were blocked from expressing their concerns to government officials. ECF No. 41 ¶¶ 28–29. Nor

4    have Plaintiffs alleged how Defendants "chilled" Plaintiffs from petitioning the government. At

5    best, Plaintiffs are alleging that Defendants did not listen to their requests for a reinspection or

6    hearing, which is insufficient to state a First Amendment claim. Given the sparse facts alleged,

7    the Court dismisses Plaintiffs' First Amendment claim with leave to amend in the event they are

8    able to allege supporting facts.

9    ### iv.  Fourth Amendment Unreasonable Searches and Seizures

10    The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const.

11    amend. IV. "A search occurs when an expectation of privacy that society is prepared to consider

12    reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The Ninth Circuit

13    has found Fourth Amendment search claims insufficient to survive a motion to dismiss when the

14    plaintiff did not allege "how the search was conducted or what specific area of the property was

15    searched." *Dalewood Holding LLC v. City of Baldwin Park*, 859 F. App'x 62, 63 (9th Cir. 2021)

16    (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)) ("Courts must consider the scope of the

17    particular intrusion, the manner in which it is conducted, the justification for initiating it, and the

18    place in which it is conducted.").

19    "A seizure of property occurs when there is some meaningful interference with an

20    individual's possessory interests in that property." *Jacobsen*, 466 U.S. at 113. The seizure must be

21    unreasonable to violate the Fourth Amendment. *Soldal v. Cook Cnty.*, 506 U.S. 56, 61–62 (1992);

22    *see also Florida v. Jimeno*, 500 U.S. 248, 250 (1991) ("The Fourth Amendment does not

23    proscribe all state-initiated searches and seizures; it merely proscribes those which are

24    unreasonable."). To determine whether a seizure was reasonable, courts balance the intrusiveness

25    against the government's interests. *Jacobsen*, 466 U.S. at 113.

26    Defendants argue that Plaintiffs failed to allege a claim under the Fourth Amendment

27    because they have not specified whether Defendants conducted an unreasonable search or an

28    unreasonable seizure, let alone alleged the "where, when, who, how, and what" of the claim. ECF

No. 50 at 10. Defendants further argue that the Fourth Amendment does not protect against searches in certain areas of the motel that are open to the public. *Id.* at 9–10. Plaintiffs respond that they are alleging both an illegal search and seizure. ECF No. 55 at 3. They do not seem to oppose the argument regarding the public areas of the motel but allege that there was an illegal search of the locked areas of the motel and that the motel closure was an illegal seizure. *Id.* at 3–4. Defendants reply that Plaintiffs allege no illegal searches inside the two-year statute of limitations. ECF No. 58 at 5. Defendants further argue that Plaintiffs' illegal seizure claim is futile because they remain in legal and physical possession of the motel. *Id.* at 6 (citing *Dalewood Holding LLC v. City of Baldwin Park*, 859 F. App'x 62, 63 (9th Cir. 2021)).

First, upon reviewing the amended complaint, the Court agrees with Defendants that Plaintiffs alleged no facts supporting an illegal search apart from the instances in October 2021 and June 2022. *See* ECF No. 41 ¶¶ 13, 17. As discussed above, claims arising on those dates are barred by the statute of limitations. *See supra*, Section II.C.i. Accordingly, Plaintiffs' Fourth Amendment search claim based on the events in October 2021 and June 2022 is dismissed with prejudice. To the extent Plaintiffs believe that a warrantless search occurred on October 19, 2023, they may amend. Should Plaintiffs choose to do so, they must allege which specific Defendants were involved and "how the search was conducted or what specific area of the property was searched." *Dalewood Holding LLC*, 859 F. App'x at 63; *Bell v. Wolfish*, 441 U.S. 520 (1979).

Second, Plaintiffs have not alleged facts supporting how Defendants' closure of the motel was unreasonable. They seem to allege that Defendants closed the motel due to numerous safety violations. For example, Plaintiffs state that on October 18, 2023, they were cited with several notices of violations, including "1) mechanical equipment (the units inspected did not have functional permanently installed heating equipment; 2) bathroom violations (grab bars, water closet clearance, etc.) 3) no proper automatic fire sprinkler system." ECF No. 41 ¶ 36. They explain that the next day "the City, along with the Health Department, and Code Enforcement, completely shut down the [motel] . . . stating the structural issue from the permit was unresolved." *Id.* ¶ 30. Assuming the closure constituted a seizure, it may have been reasonable given the violations. *See Sylvia Landfield Trust*, 729 F.3d at 1192 ("[O]ne of the most important

and fundamental duties a city can perform is to protect its residents from unsafe housing

conditions."). Plaintiffs allege no facts to the contrary. Therefore, the Court dismisses their Fourth

Amendment seizure claim with leave to amend.

However, the Court grants leave to amend as this claim is not futile. Defendants'

argument that this claim is futile based on *Dalewood Holding LLC v. City of Baldwin Park*, 859

F. App'x 62 (9th Cir. 2021), is not convincing because that case is distinguishable. In *Dalewood*,

the Ninth Circuit explained that the plaintiff "alleges only that the City continues to threaten to

seize illegally the property and remove the buildings on it. This threat does not amount to

meaningful interference with [Dalewood's] possessory interest in [the] property." *Id.* at 64. Here,

Plaintiffs are alleging more than threats; they allege that Defendants shut down the motel's

operations. At this stage, the Court cannot conclude that such acts do not constitute a meaningful

interference with the possessory interests in the motel.

### v.  Fifth Amendment Takings Clause

The Fifth Amendment Takings Clause provides a cause of action when the government

takes private property for public use without just compensation. *Knick v. Twp. of Scott,*

*Pennsylvania*, 588 U.S. 180, 184 (2019). The Supreme Court defines the public use requirement

broadly. *Kelo v. City of New London, Conn.*, 545 U.S. 469, 480 (2005). Two types of government

action may constitute a taking: physical and regulatory. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe*

*Reg'l Plan. Agency*, 535 U.S. 302, 321 (2002).

A physical taking occurs "[w]hen the government physically takes possession of an

interest in property for some public purpose." *Id.* at 322. A regulatory taking occurs when

government regulation of private property is "so onerous that its effect is tantamount to a direct

appropriation or ouster." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 528 (2005). "Regulatory

actions generally will be deemed *per se* takings for Fifth Amendment purposes (1) where

government requires an owner to suffer a permanent physical invasion of her property or (2)

where regulations completely deprive an owner of '*all* economically beneficial us[e]' of her

property." *Id.* (internal citations omitted). Outside these two categories, regulatory takings

challenges are governed by *Penn Central Transp. Co. v. New York City,* 438 U.S. 104 (1978).

1    Under *Penn Central*, courts consider the regulation's economic impact on the claimant,

2    the extent to which it interferes with distinct investment-backed expectations, and the character of

3    the government action. *Id.* at 124. These factors seek "to identify regulatory actions that are

4    functionally equivalent to the classic taking in which government directly appropriates private

5    property or ousts the owner from his domain." *Lingle*, 544 U.S. at 529.

6    First, "[i]n considering the economic impact of an alleged taking, we 'compare the value

7    that has been taken from the property with the value that remains in the property.'" *Colony Cove*

8    *Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018) (quoting *Keystone Bituminous*

9    *Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987)). As the Ninth Circuit has explained: "Not

10   every diminution in property value caused by a government regulation rises to the level of an

11   unconstitutional taking." *Id.* at 451. "[W]e have observed that diminution in property value

12   because of governmental regulation ranging from 75% to 92.5% does not constitute a taking." *Id.*

13   Defendants argue that Plaintiffs have not specified any conduct that would constitute a

14   taking under the Fifth Amendment because they still possess the property and have not purported

15   that the taking was for public use. ECF No. 50 at 9–11. They argue that Plaintiffs have not

16   established a taking under *Penn Central* either because they have not alleged that the land has

17   been wholly deprived of all economic value. *Id.* Plaintiffs respond that the closure of the motel is

18   a physical taking and allowing the 180-day period to lapse so that the motel was classified as a

19   non-conforming use is a regulatory taking. ECF No. 55 at 5–7. They assert that the *Penn Central*

20   analysis is a factual determination that cannot be decided on a motion to dismiss and that the

21   public use clause is construed broadly. *Id.* Defendants reply that Plaintiffs cannot plead a physical

22   taking because the Trust still owns the property. ECF No. 58 at 6–8. Citing to Ninth Circuit

23   authority stating that courts may resolve regulatory takings claims on a motion to dismiss,

24   Defendants argue that Plaintiffs cannot allege a significant diminution in their property's value

25   under *Penn Central* given that they still own the property and it is zoned for mixed use. *Id.* (citing

26   *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 966 (9th Cir. 2003)).

27   First, Plaintiffs cannot allege a physical taking based on the closure of the motel. "A

28   forced closure does not constitute an appropriation of the property for the government or a third

1  party, and thus cannot support a physical taking claim." *Essavi v. City of Los Angeles*, No. 2:24-

2  cv-00454-RGK-AGR, 2024 WL 2743607, at *4 (C.D. Cal. Apr. 25, 2024), *aff'd sub nom. Essavi,*

3  *Tr. of Carasso Fam. Tr. v. City of Los Angeles*, No. 24-3336, 2025 WL 2048996 (9th Cir. July 22,

4  2025); *see also Vaghashia v. City of Los Angeles*, No. 22-56064, 2024 WL 379972, at *1 (9th

5  Cir. Feb. 1, 2024) (holding that preventing a motel from renting to transient customers does not

6  amount to a physical taking). Moreover, the Trust still owns the property. ECF No. 50, Ex. C.

7  This claim is dismissed with prejudice as there are no set of facts Plaintiffs could allege to state a

8  physical taking claim under the Fifth Amendment.

9      Second, Plaintiffs have not alleged a per se regulatory taking. They claim that Defendants

10  refused to reinspect the motel in the 180-day period, causing the motel to lose its legal

11  nonconforming status, which "raises an issue of regulatory taking." ECF No. 55 at 7. Critically,

12  Plaintiffs fail to identify an ordinance or regulation that supposedly led to the taking. They do not

13  allege they have been deprived of all economically beneficial use of the property, or that the

14  regulation caused them to suffer a physical invasion of their property. Nor could they given that

15  the Trust still owns the property and there are other economic uses for it. To the extent Plaintiffs

16  seek to allege a per se regulatory taking, their claim is dismissed with prejudice.

17      As to their claim under *Penn Central*, Plaintiffs have alleged no facts that would support

18  the economic impact factor weighing in their favor. *See Evans Creek, LLC v. City of Reno*, No.

19  21-16620, 2022 WL 14955145, at *1 (9th Cir. Oct. 26, 2022) ("As pleaded, the complaint lacks

20  any information about the value of the property when the 2020 Application was submitted or its

21  value after the 2020 Application was denied . . . it is not possible for this Court to determine what

22  the economic impact to the property is, even taking the allegations in the complaint as true."); *see*

23  *also S. California Rental Hous. Ass'n v. Cnty. of San Diego*, 550 F. Supp. 3d 853, 864 (S.D. Cal.

24  2021) ("It is difficult to calculate the impact that the Ordinance has on the value of Plaintiff's

25  members' property interests, particularly because Plaintiff has not included any facts related to a

26  diminution of value of their property."). Even if Plaintiffs had alleged facts relevant to the *Penn*

27  *Central* factors, it is difficult to see how they could show a diminution in property value rising to

28

1   the level of an unconstitutional taking given that the Trust still owns the property, which is zoned

2   for multiple uses.

3          Defendants do not address the other factors in detail, so the Court will not either, other

4   than to say that Plaintiffs have alleged no facts concerning the regulation's interference with

5   distinct investment-backed expectations or the character of the government action. Accordingly,

6   the Court dismisses this claim. However, it will grant leave to amend *only to the extent* Plaintiffs

7   can allege facts demonstrating the regulation's economic impact, the extent to which the

8   regulation interferes with distinct investment-backed expectations, and the character of the

9   government action.

10                          **vi.   Fourteenth Amendment Due Process Clause**

11                                  ***1.   Void for Vagueness***

12         The Fourteenth Amendment precludes states from "depriv[ing] any person of life, liberty,

13  or property, without due process of law." U.S. Const. amend. XIV, § 1. The void for vagueness

14  doctrine "addresses at least two connected but discrete due process concerns: first, that regulated

15  parties should know what is required of them so they may act accordingly; second, precision and

16  guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory

17  way." *Fed. Commc'n Comm'n v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). As to

18  fair notice, courts consider whether a statute "fails to provide a person of ordinary intelligence

19  fair notice of what is prohibited." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). As to the

20  enforcement concern, the Supreme Court has stated that "laws must provide explicit standards for

21  those who apply them," and that "[a] vague law impermissibly delegates basic policy matters to

22  policemen, judges, and juries for resolution on an *ad hoc* and subjective basis." *Grayned v. City

23  of Rockford*, 408 U.S. 104, 108–09 (1972).

24         Defendants argue that Plaintiffs do not articulate what law they believe is vague or

25  indefinite, let alone how the terms of that unspecified law or ordinance is unconstitutionally

26  vague. ECF No. 50 at 12. Plaintiffs do not oppose this argument or otherwise address it. *See* ECF

27  No. 55. In their complaint, they allege that "the Notice and Ordinance on its face and as applied to

28  Plaintiff is 'void for vagueness' under the Fourteenth Amendment's Due Process Clause." ECF

No. 41 ¶ 55. They do not specify which notice or ordinance they are referring to, or how it is so vague as to not provide fair notice or to lead to arbitrary enforcement. Accordingly, Plaintiffs' claim under the void for vagueness theory is dismissed with leave to amend.

### 2.  *Substantive Due Process*

"Substantive due process 'forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the concept of ordered liberty.'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (quoting *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)). Courts "begin the substantive due process analysis with a 'careful description' of the asserted fundamental right." *Regino v. Staley*, 133 F.4th 951, 963 (9th Cir. 2025) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). When government action affects only economic interests, it does not interfere with fundamental rights. *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012). "The right to use property as one wishes is also not a fundamental right." *Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021).

"Laws that do not infringe a fundamental right survive substantive-due-process scrutiny so long as they are 'rationally related to legitimate government interests.'" *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015) (quoting *Glucksberg*, 521 U.S. at 728). Under rational basis review, state conduct is presumed valid and will be upheld so long as it is "rationally related to a legitimate state interest," such as public health, safety, morals or general welfare. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *Yagman v. Garcetti*, 852 F.3d 859, 867 (9th Cir. 2017). Plaintiffs may overcome the presumption that state conduct is valid only by a clear showing of arbitrariness and irrationality. *Yagman*, 852 F.3d at 867. "This is an exceedingly high burden." *Id.* (quoting *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008)).

Defendants argue that Plaintiffs fail to identify what ordinance they seek to challenge. Assuming Plaintiffs challenge the downtown master plan, Defendants argue that Plaintiffs must show that the City maintains no legitimate interest in that plan, which they cannot do. ECF No. 50 at 13. Plaintiffs offer two sentences in response, arguing that "the City's actions are unwarranted

1    in revoking the motel's permits" and that the Court cannot decide this issue on a motion to

2    dismiss. ECF No. 55 at 7–8. Defendants reply that if their claim has morphed into challenging the

3    change in nonconforming status, it is still futile because Plaintiffs cannot meet the high burden to

4    show that the change in status was arbitrary or irrational given that the motel closure and

5    nonconforming status change advance legitimate interests in public welfare and safety. ECF No.

6    58 at 9–10.

7        As Defendants point out, it is unclear what state conduct Plaintiffs are alleging violates

8    their substantive due process rights. This alone constitutes failure to state a claim. Plaintiffs

9    merely state that "in doing all of things herein mentioned" Defendants violated their substantive

10   rights under the Due Process Clause. ECF No. 41 ¶ 54. Plaintiffs argue that the City violated their

11   rights by revoking their permit, but they also mention "justifying the closure imposed and the

12   classification of the motel as a non-conforming use." ECF No. 55 at 5, 8.

13       Under either theory, Plaintiffs fail to state a substantive due process claim. Assuming the

14   unspecified state conduct did not implicate a fundamental right, Plaintiffs do not allege how the

15   conduct was arbitrary or capricious. And if Plaintiffs believe that the state conduct did implicate a

16   fundamental right, they fail to explain what that fundamental right is. The Court cannot determine

17   whether this claim is futile based on the sparse facts before it. Thus, Plaintiffs' claim is dismissed

18   with leave to amend. However, the Court will note that the Ninth Circuit has found, in an

19   unpublished opinion, that when state conduct closed a motel to abate a nuisance, such conduct

20   was not arbitrary or unreasonable. *See Patel v. City of Los Angeles*, No. 24-3293, 2025 WL

21   1077132, at *2 (9th Cir. Apr. 10, 2025).

22                      ***3.  Procedural Due Process***

23       "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property

24   interest protected by the Constitution; (2) a deprivation of the interest by the government; [and]

25   (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v.*

26   *County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). "A constitutionally protected property

27   interest arises where there is a reasonable expectation of entitlement deriving from 'existing rules

28   or understandings that stem from an independent source' such as state or municipal law." *Patel v.*

*City of Anaheim*, 78 F. App'x 596, 597 (9th Cir. 2003) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). A benefit is not a protected entitlement if government officials may grant or deny the benefit at their discretion. *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756 (2005). As to "lack of process," property owners are not entitled to receive actual notice before the government takes their property. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Due process only requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Defendants argue that Plaintiffs fail to state a procedural due process claim because they do not allege what property interest they were deprived of or what specific process they were owed but not given. ECF No. 50 at 12–13. Plaintiffs respond that they were not given a pre- or post-deprivation hearing after the motel's closure on October 19, 2023. ECF No. 55 at 8. Defendants reply that Plaintiffs do not address the issue of what property interest they were supposedly deprived of given that the Trust still owns the property. ECF No. 58 at 8–9. To the extent Plaintiffs' theory is that they have a property interest in the legal nonconforming status of the property, Defendants argue that theory also fails because it is not a protected entitlement. *Id.* at 9 (citing *Town of Castle Rock, Colorado v. Gonzales,* 545 U.S. 748, 756 (2005)).

It appears Plaintiffs are alleging that they have a property interest in operating the motel and that they were deprived process when Defendants closed the motel without a hearing. ECF No. 41 ¶ 41. However, Plaintiffs have not alleged facts showing that they had a reasonable expectation of entitlement to continue operating the motel based on an independent source (like municipal law) that was not subject to government discretion.

In addition, Plaintiffs have not sufficiently alleged lack of process. In their complaint, they state that Defendants "did not clear Plaintiffs to operate stating the structural issue from the permit was unresolved [] and summarily closed the entire motel." *Id.* ¶ 30. But as Defendants point out, Plaintiffs were provided notice of the structural issue two years prior and had been provided notice of numerous code violations. *Id.* ¶¶ 13, 35. At this point, the Court does not have

enough information to determine whether this is adequate notice. *See Grimm v. City of Portland*, 125 F.4th 920, 925 (9th Cir. 2025 ("In determining what notice is appropriate under the *Mullane* standard, we must balance the interest of the State and the individual interest sought to be protected by the Fourteenth Amendment.") (cleaned up). In sum, the Court dismisses Plaintiffs' claim with leave to amend to properly allege a constitutionally protected property interest and facts demonstrating that they were not given adequate notice.

### vii.  Fourteenth Amendment Equal Protection Clause

Under the Equal Protection Clause, no state "may deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Plaintiffs may allege equal protection claims in two ways. First, they may allege that defendants intentionally discriminated against them based on their membership in an identifiable class. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). Second, plaintiffs may allege that defendants intentionally treated them differently from similarly situated individuals, and that there was no rational state purpose for the different treatment. *Id.*

Defendants contend that Plaintiffs do not allege that they belong to an identifiable class or that Defendants treated them differently from similarly situated individuals. ECF No. 50 at 14–15. Plaintiffs fail to address this argument. Upon review of the complaint, the Court agrees with Defendants that Plaintiffs allege no facts to support an equal protection claim. The Court dismisses this claim with leave to amend. Plaintiffs should specify whether they are alleging discrimination based on membership in an identifiable class or disparate treatment. Plaintiffs should also include allegations about how Defendants actions were intentional.

### viii.  Privileges and Immunities Clause

The Privileges and Immunities Clause provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. This clause was "designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer v. Witsell*, 334 U.S. 385, 395 (1948). To be a citizen for purposes of this clause, a plaintiff must be a natural person. *Paul v. State of Virginia*, 75 U.S. 168, 177 (1868), *overruled on other grounds by United States v. S.-E.*

1    *Underwriters Ass'n*, 322 U.S. 533 (1944); *see also Iowa Pork Producers Ass'n v. Bonta*, No.

2    2:21-cv-09940-CAS (AFMX), 2022 WL 613736 (C.D. Cal. Feb. 28, 2022), *aff'd*, No. 22-55336,

3    2024 WL 3158532 (9th Cir. June 25, 2024) ("The Court notes that the Privileges and Immunities

4    Clause applies to natural persons only, and not legal entities.").

5        Courts employ a two-step inquiry. First, they consider whether the activity in question is

6    "sufficiently basic to the livelihood of the nation" to fall within the purview of the Privileges and

7    Immunities clause. *Reitz v. Kipper*, 674 F. Supp. 2d 1194, 1201 (D. Nev. 2009) (quoting *Supreme*

8    *Court of Va. v. Friedman*, 487 U.S. 59, 64 (1988)). Second, they analyze whether the challenged

9    restriction is closely related to the advancement of a substantial state interest. *Id.*

10        Defendants argue that, as an initial matter, the LLC and Trust cannot assert a claim under

11    this clause because they are not natural persons. ECF No. 50 at 17. As to the individual Plaintiffs,

12    Defendants argue that they cannot allege Defendants treated them differently from out-of-state

13    citizens because the downtown master plan and municipal code apply equally to all businesses

14    and individuals. *Id.* Plaintiffs do not address this argument.

15        Here, the Court agrees with Defendants that the Privileges and Immunities claim brought

16    on behalf of the LLC and Trust are futile as they are not natural persons. However, the Court

17    cannot say that the individual Plaintiffs' claim under the Privileges and Immunities clause is futile

18    because the complaint is devoid of specific facts supporting this claim. Thus, Plaintiffs' claim is

19    dismissed with prejudice as to the LLC and Trust but with leave to amend as to the individual

20    Plaintiffs. Should Plaintiffs amend this claim, however, they must allege facts supporting how the

21    activity in question is sufficiently basic to the livelihood of the nation to fall within the purview of

22    the clause and whether the challenged restriction is closely related to the advancement of a

23    substantial state interest.

24                            **ix.  Privileges or Immunities Clause**

25        The Privileges or Immunities Clause provides that "[n]o State shall make or enforce any

26    law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const.

27    amend. 14. "Natural persons, and they alone, are entitled to the privileges and immunities which

28    Section 1 of the Fourteenth Amendment secures for citizens of the United States." *Hague v.*

1   *Comm. for Indus. Org.*, 307 U.S. 496, 514 (1939); *see also Lone Star Sec. & Video, Inc. v. City of*

2   *Los Angeles*, 989 F. Supp. 2d 981, 993 (C.D. Cal. 2013), *aff'd*, 827 F.3d 1192 (9th Cir. 2016)

3   ("Lone Star is a corporation, not a natural person, so the Fourteenth Amendment's privileges or

4   immunities clause affords no relief."). The clause only secures a narrow class of rights—those

5   which "own their existence to the Federal government, its National character, its Constitution, or

6   its laws." *Merrifield v. Lockyer*, 547 F.3d 978, 983 (9th Cir. 2008) (quoting *Slaughter-House*

7   *Cases*, 83 U.S. 36, 79 (1872)). This includes rights:

8       to come to the seat of government to assert any claim [a citizen] may have upon that
        government, to transact any business he may have with it, to seek its protection, to share
9       its offices, to engage in administering its functions ... [and to] become a citizen of any
        State of the Union by a *bonafide* residence therein, with the same rights as other citizens
10      of that State.

11  *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 755 (2010) (quoting *Slaughter-House Cases*, 83

12  U.S. at 79–80 (1872)).

13          The right of every person to pursue their profession without unequal or discriminatory

14  restrictions is not included in those protected rights, to the objection of the dissent in the

15  *Slaughter-House Cases*. 83 U.S. at 96–97 (Field, J., dissenting). *See McDonald*, 561 U.S. at 756.

16  Property rights are also not protected under this clause. *Courtney v. Danner*, 801 F. App'x 558

17  (9th Cir. 2020) (holding that an intrastate ferry franchise is a property right that is not protected

18  by the privileges or immunities clause because it is state right); *see also Merrifield v. Lockyer*,

19  547 F.3d 978, 983 (9th Cir. 2008) (holding that state licensing requirement impeding state

20  resident from practicing particular profession within the state does not implicate the privileges or

21  immunities clause).

22          Defendants argue that the LLC and Trust cannot assert a claim under the Privileges or

23  Immunities clause because they are not natural persons. ECF No. 50 at 18. They further argue that

24  any interference with Plaintiffs renting out the motel to transient guests is not a protected right.

25  *Id.* Plaintiffs do not address this argument. Moreover, it is unclear whether Plaintiffs intended to

26  allege a claim under this clause. In their complaint, they identify "the Privileges *and* Immunities

27  Clause of Article IV, Section 2 and the Fourteenth Amendment of the United States

28  Constitution." ECF No. 41 ¶ 54 (emphasis added). As discussed above, the Privileges and

1    Immunities clause comes from Article IV, while the Privileges or Immunities clause comes from

2    the Fourteenth Amendment.

3         To the extent Plaintiffs are even alleging a claim under the Privileges or Immunities

4    clause, the Court dismisses their claim without prejudice because they have not alleged any

5    supporting facts. If they wish to pursue a claim under the Privileges or Immunities clause,

6    Plaintiffs should carefully review the above case law to determine whether they can allege facts

7    supporting this claim.

8              **x. Contract Clause**

9         Article I of the United States Constitution provides that "[n]o state shall . . . pass any . . .

10   Law impairing the Obligation of Contracts." U.S. Const., Art. I, § 10, cl. 1. Thus, the contract

11   clause restricts state power to disrupt contractual arrangements. *Ashley Sveen v. Kaye Melin*, 584

12   U.S. 811, 818 (2018). But not all laws that affect pre-existing contracts violate the contracts

13   clause. *Id.* To determine whether such a law is unconstitutional, courts apply a two-part test. First,

14   courts consider whether the state law has "operated as a substantial impairment of a contractual

15   relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978). Second, they

16   consider "the extent to which the law undermines the contractual bargain, interferes with a party's

17   reasonable expectations, and prevents the party from safeguarding or reinstating his rights."

18   *Ashley Sveen*, 584 U.S. at 819.

19        Defendants argue that Plaintiffs fail to plead a claim under the contracts clause because

20   they do not identify a contract that was supposedly impaired. ECF No. 50 at 18–19. Plaintiffs do

21   not address this argument.

22        The Court dismisses this claim with leave to amend. Plaintiffs do not identify a contract

23   nor the law that allegedly substantially impaired the unspecified contract. Their allegations are

24   too vague to determine whether the claim is futile at this point. Should Plaintiffs amend this

25   claim, they must identify the contract and law at issue as well as allege facts supporting a

26   substantial impairment of the contractual relationship.

27   / /

28   / /

1

xi.  **Commerce Clause**

2      The Commerce Clause gives Congress the power to regulate commerce with foreign

3  nations and among the states. U.S. Const., Art. I, § 8, cl. 3. "[T]he Commerce Clause not only

4  vests Congress with the power to regulate interstate trade; the Clause also 'contain[s] a further,

5  negative command,' one effectively forbidding the enforcement of 'certain state [economic

6  regulations] even when Congress has failed to legislate on the subject.'" *Nat'l Pork Producers*

7  *Council v. Ross*, 598 U.S. 356, 368 (2023) (quoting *Oklahoma Tax Comm'n v. Jefferson Lines,*

8  *Inc.*, 514 U.S. 175 (1995)). This "negative command" is more commonly known as the Dormant

9  Commerce Clause. *Id.*

10      The Dormant Commerce Clause prohibits state laws "driven by . . . 'economic

11  protectionism—that is, regulatory measures designed to benefit in-state economic interests by

12  burdening out-of-state competitors.'" *Department of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–

13  338 (2008) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273–274 (1988)). The

14  Ninth Circuit evaluates dormant Commerce Clause claims under a two-step approach. *Safari Club*

15  *In'l v. Becerra*, 702 F. App'x 607, 607 (9th Cir. 2017). First, courts consider whether the law

16  discriminates against or directly regulates interstate commerce. *Id.* (citing *Pharm. Research &*

17  *Mfrs. of Am. v. Cty. of Alameda*, 768 F.3d 1037, 1041, 1044 (9th Cir. 2014)). Second, courts

18  analyze whether the burden imposed on interstate commerce is "clearly excessive in relation to

19  the putative local benefits." *Id.* (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

20      Defendants argue that Plaintiffs fail to state a claim because they do not identify which

21  regulation they are challenging or whether the challenge is based on the Commerce Clause or

22  Dormant Commerce Clause. ECF No. 50 at 19–20. They further argue that if Plaintiffs' claim is

23  based on the downtown master plan or Henderson Municipal Code, it is futile because the plan

24  and code do not regulate nor burden interstate commerce as they are confined to Henderson only.

25  *Id.* at 20. Plaintiffs do not address this argument.

26      The Court dismisses Plaintiffs' claim with leave to amend. As Defendants point out,

27  Plaintiffs do not specify what state law supposedly violates the Commerce Clause, nor do they

28  allege that such law discriminates or regulates or burdens interstate commerce. Thus, they fail to

1  state a claim. However, the Court cannot find that their claim is futile given the sparse facts

2  before it. Should Plaintiffs amend this claim, they must identify whether they are bringing a claim

3  under the Commerce Clause or Dormant Commerce Clause; facts specifying what state law they

4  believe violates the clause; and allege facts that would support finding the state law substantially

5  burdens interstate commerce.

6  **D. Breach of Contract Claim**

7  "To prevail on a claim for breach of contract, the plaintiff must establish (1) the existence

8  of a valid contract, (2) that the plaintiff performed, (3) that the defendant breached, and (4) that

9  the breach caused the plaintiff damages." *Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992*

10  *Fam. Tr. v. Reg'l Transportation Comm'n of Washoe Cnty.*, 522 P.3d 453, 458 (Nev. App. 2022).

11  A valid contract requires: (1) an offer and acceptance, (2) meeting of the minds, and (3)

12  consideration. *CF Staffing Sols., LLC v. Dist. Healthcare Servs., LLC*, No. 2:24--02355-GMN-

13  EJY, 2025 WL 1279716, at *3 (D. Nev. May 2, 2025) (citing *May v. Anderson*, 119 P.3d 1254,

14  1257 (Nev. 2005)). A meeting of the minds exists when the parties have agreed upon the

15  contract's essential terms. *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 255

16  (2012). Which terms are essential "'depends on the agreement and its context and also on the

17  subsequent conduct of the parties, including the dispute which arises and the remedy sought.'" *Id.*

18  (quoting Restatement (Second) of Contracts § 131 cmt. g (1981)). Contracts must be definite

19  enough to enable the court to ascertain what is required of the respective parties. *Id.* (citing

20  *Richards v. Oliver*, 328 P.2d 544, 552 (1958)).

21  Defendants argue that Plaintiffs fail to establish the existence of a valid contract because

22  they do not allege who the purported contract was between or whether there was a meeting of the

23  minds. ECF No. 50 at 22. Plaintiffs respond that "Defendants Beaton, Massy, Dwyer, and

24  Dichter, at various times, had advised Plaintiffs the required inspections would be performed once

25  the code violations were completed," and Defendants breached the contract by not performing the

26  inspections. ECF No. 54 at 5–6. Plaintiffs further contend that they upheld their end of the

27  bargain by completing work on the code violations. *Id.* at 6. Defendants reply that the breach of

28  contract claim is futile because "advis[ing]" that an inspection would take place is not an offer,

and Plaintiffs fail to identify any consideration for the contract because a preexisting duty is generally not adequate consideration. ECF No. 58 at 11 (citing *Cain v. Price*, 415 P.3d 25, 28 (Nev. 2018)).

Plaintiffs do not allege sufficient facts to state a claim for breach of contract. In their complaint, Plaintiffs allege that they "complied with the terms of the oral agreement to make the required and necessary repairs to the motel." ECF No. 41 ¶ 69. They further allege that Defendants breached the oral contract "when [they] failed to inspect the structural repairs prior to the 180-day deadline, and failed to approve the required repairs after Defendants had been informed by Defendants that all the violations had been corrected and Plaintiffs could resume operations." *Id.* ¶ 71. But there are no facts regarding: whom the contract was between; a valid offer, acceptance, and consideration; and the contract's essential terms. The Court cannot determine whether a valid contract exists or what was required of Plaintiffs based on the facts alleged in the complaint. Thus, the Court cannot say that the claim is futile at this time. Plaintiffs could allege additional facts establishing offer, acceptance, consideration, and the terms of the contract. Accordingly, the Court dismisses the breach of contract claim with leave to amend.

### E.  Fraud Claim

To state an intentional misrepresentation claim under Nevada law, plaintiffs must establish three factors: (1) a false representation that is made with either knowledge or belief that it is false or without a sufficient foundation, (2) an intent to induce another's reliance, and (3) damages that result from this reliance. *Nelson v. Heer*, 163 P.3d 420, 426 (2007). The alleged damages must be proximately caused by reliance on the misrepresentation or omission. *Id.* "Proximate cause limits liability to foreseeable consequences that are reasonably connected to both the defendant's misrepresentation or omission and the harm that the misrepresentation or omission created." *Id.*

When alleging fraud claims, Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quotation marks omitted). The plaintiff must also set forth what is false or

misleading about the statement and why. *Id.* (quotation marks omitted). Put differently, the plaintiff "must provide enough detail to give [the defendants] notice of the particular misconduct which is alleged to constitute the fraud charged so that [they] can defend against the charge and not just deny that [they have] done anything wrong." *Id.* at 999 (quotation marks omitted). "A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). "[D]ismissals under the two rules are [thus] treated in the same manner." *Id.*

The Ninth Circuit has recognized an exception to Rule 9(b)'s particularized pleading requirement when facts constituting the circumstances of the alleged fraud are within the defendant's exclusive control. *Neubronner v. Milken*, 6 F.3d 666, 670, 672 (9th Cir. 1993). "In such situations, plaintiffs can not be expected to have personal knowledge of the relevant facts." *Id.* at 672. However, a plaintiff "cannot evade Rule 9(b)'s requirements simply by stating it lacks specific knowledge." *Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168, 1177 (D. Nev. 2021).

Defendants argue that Plaintiffs fail to meet Rule 9's heightened pleading standard because they do not allege which Defendant(s) made the statement, when the statement was made, or how the statement was false or misleading. ECF No. 50 at 20–21. Plaintiffs oppose and argue that the Court should apply a relaxed pleading standard for fraud under federal and state law because Defendants control specific facts regarding the fraud. ECF No. 54 at 4–5. Specifically, Plaintiffs state "it is necessary to obtain all inter-office memos and emails between Defendants relating to the numerous alleged code violations served on Plaintiffs, and why the promised required inspections were not done." *Id.* at 5. Defendants contend that this argument amounts to a concession that Plaintiffs have not met the heightened pleading standard. ECF No. 58 at 10–11. They argue that courts cannot allow expensive discovery merely because plaintiffs may be able to allege fraud. *See id.* at 10 (citing *Oaktree Cap. Mgmt., L.P. v. KPMG*, 963 F. Supp. 2d 1064, 1089 (D. Nev. 2013)). Finally, Defendants contend that the fraud claim is futile

1   because Plaintiffs have not and cannot plead that Defendants made the alleged assurances to

2   inspect the motel with the intent to induce their reliance. *Id.* at 11.

3          As an initial matter, the Court declines to find an exception to Rule 9's heightened

4   pleading standard because Plaintiffs fail to show that Defendants are in exclusive control of the

5   facts constituting the alleged fraud. In *Motogolf*, a case Plaintiffs cite, a court in this district

6   considered whether the plaintiff had satisfied Rule 9's pleading requirement as to its claim for

7   intentional interference with contractual relations. *Motogolf.com, LLC v. Top Shelf Golf, LLC*,

8   528 F. Supp. 3d 1168, 1177 (D. Nev. 2021). The plaintiff alleged that the defendants had caused

9   at least one vendor to not allow the plaintiff to sell certain premium merchandise. *Id.* at 1173. In

10  response to the defendants' motion to dismiss, the plaintiff argued that it lacked "specific

11  knowledge of dates, times, speakers, and the precise contents of the statements." *Id.* at 1177.

12         The court rejected this argument. It reasoned that the plaintiff had not shown that the

13  defendants had exclusive control of the alleged fraudulent information given "that the vendors

14  were part of these conversations and [the plaintiff] apparently knows of at least one vendor that

15  terminated its relationship with [the plaintiff]." Here, Plaintiffs have even more information than

16  the party in *Motogolf*. Plaintiffs' own allegations state that Arpit was in constant communications

17  with Defendants, who assured him that the required inspection would occur soon. ECF No. 41

18  ¶ 31. Plaintiffs state that they are in possession of "[a]ll the documents relating to the alleged code

19  violations of the Motel for the past several years, [which] contain the dates issued, the deadlines

20  to correct violations, the person who issued the violation and the person who was to inspect the

21  work done . . . ." ECF No. 54 at 4. Even if Plaintiffs are unsure whether these documents are

22  complete, Defendants are not in exclusive control of the facts regarding the alleged fraud. The

23  fact that Defendants may have some relevant information related to the fraud claim is not the

24  same as Defendants having exclusive control over the relevant facts.

25         Applying the heightened standard under Rule 9(b), the Court dismisses Plaintiffs' fraud

26  claim with leave to amend. Plaintiffs allege that after the motel was shut down, Defendants

27  assured Plaintiffs that the required inspection would occur soon, and Plaintiffs completed the

28  required work to correct the violation(s) prior to the 180-day deadline to reopen the motel. ECF

No. 54 at 3; ECF No. 41 ¶¶ 30–31. But these allegations do not state specific facts regarding which Defendant(s) made the statement, when/where the statement was made, and why the statement is false or misleading. Given the lack of allegations before the Court, it cannot say that Plaintiffs' claim is futile. Should Plaintiffs amend this claim, they must allege the who, what, when, where, and how of the claim. This includes what is false or misleading about the statement and why. They must also take into account the elements of an intentional misrepresentation claim, which include reliance, causation, and damages.

### i.  Punitive Damages

Under Nevada Revised Statute 41.035, punitive damages cannot be awarded in actions sounding in tort against officers or employees of any political subdivision or against a political subdivision for acts or omissions arising out of the scope of public duties. *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 336 (9th Cir. 1995); *see also Bryan v. Las Vegas Metro. Police Dep't*, 349 F. App'x 132, 135 (9th Cir. 2009) ("[NRS] § 41.035(1) bars punitive damages arising out of the state claims for both the individual officers and for the METRO police."). Plaintiffs request punitive damages as to their fraud claim only. ECF No. 41 at 14. Defendants argue that NRS 41.035 bars Plaintiffs from recovering punitive damages. Plaintiffs do not address this argument. Accordingly, the Court dismisses Plaintiffs' request for punitive damages (as to their fraud claim) with prejudice because Defendants consist of a political subdivision and its officers or employees.

### F.  Motion for More Definite Statement

"A party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "'Rule 12(e) motions are disfavored and rarely granted.'" *Underwood v. O'Reilly Auto Parts, Inc.*, 671 F. Supp. 3d 1180, 1187 (D. Nev. 2023) (quoting *Buckley v. Cnty. of San Mateo*, No. 14-cv-05488, 2015 WL 5769616, at *5 (N.D. Cal. Oct. 2, 2015)). Still, courts have discretion in deciding these types of motions and granting them is generally appropriate when the responding party cannot ascertain the substance of the asserted claim. *Id.* at 1186–87. "If the court grants a party's motion

for more definite statement, the court may allow leave to amend the pleading to make them consistent with the rules of pleading outlined in Fed. R. Civ. P. 8." *Id.* at 1187.

Defendants move for a more definite statement in the alternative. ECF No. 50 at 23–25. They state that if the Court permits amendment, it should order a more definite statement to plead the parties and the claims. Plaintiffs oppose. ECF No. 55 at 10–11. The Court has essentially done so throughout this order by giving Plaintiffs specific instructions should they choose to amend. As a result, this request is denied as moot.

## II.   CONCLUSION

Plaintiffs are warned to pay close attention to the instructions set forth in this order regarding any claim for which leave to amend has been granted. The Court has issued a 28-page order providing detailed, claim-by-claim guidance on how to properly plead their allegations. Plaintiffs are therefore expected to adhere strictly to these directives and ensure that any amended complaint fully complies with the Court's instructions. Further leave to amend based on pleading deficiencies will likely not be granted given both the level of detail provided in this order and the familiarity Plaintiffs should already possess with filing complaints of this nature.

**IT IS ORDERED** that Defendants' motion to dismiss (ECF No. 50) is **GRANTED** with leave to amend certain claims as set forth above.

**IT IS FURTHER ORDERED** that the second-amended complaint is due no later than December 29, 2025. The Court gives Plaintiffs 45 days to amend to account for the fact that they need to locate new local counsel. It is not inclined to grant future continuances of the second-amended complaint deadline.

DATED: November 13, 2025

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE